UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCOTT MOELLER,

    Plaintiff,

v.                                                      Case No.: 8:24-cv-519-JLB-NHA

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

    Defendant.
_____/

**ORDER**

    This is a bad faith insurance action. Plaintiff Scott Moeller moves to compel Defendant Progressive American Insurance Company to produce documents in response to Plaintiff's First Request for Production, and answers in response to Plaintiff's First Set of Interrogatories. Doc. 20. Additionally, Plaintiff seeks to recover the fees it incurred in bringing its motion. *Id.*

    Following a hearing on the motion, I grant it, in part. I overrule Defendant's relevance objection to producing materials created between September 24, 2019 and September 27, 2023, and order Defendant to produce documents withheld on that basis. I overrule Defendant's relevance objection to producing documents associated with claims other than the bodily injury claim and order it to produce documents withheld on that basis. I order Defendant to respond to Interrogatory 2, as modified below, and to

Interrogatory 3, as written. I deny Plaintiff's motion for expenses incurred in bringing its motion.

## I. Background

Plaintiff brings a bad-faith insurance action against Defendant for allegedly breaching the fiduciary duties Defendant owed to Plaintiff, its insured, after Plaintiff's November 8, 2018 automobile accident. Compl. (Doc. 1-1), pp. 7, 10. A party injured in the accident sued Plaintiff in state court. *Id.* at p. 8. Prior to trial, until around September 17, 2019,[1] the injured party offered to settle her claim for $25,000, Defendant's bodily-injury policy limit; Defendant declined. *Id.* at p. 8. Ultimately, the case went to trial and the jury awarded the injured party more than $5.8 million against Plaintiff. *Id.* at p. 9. Plaintiff appealed that judgment, and the Florida's Second District Court of Appeals affirmed the judgment on September 27, 2023. *Id.* at p. 9. Its mandate issued on October 19, 2023. *Id.*

This suit followed. Here, Plaintiff alleges that Defendant acted in bad faith toward him in a variety of ways, including by failing to act honestly and diligently on his behalf, failing to properly communicate with him about the

---

[1] The Complaint alleges this settlement window ended on September 17, 2019. Doc 1-1, ¶ 16. Defendant suggests the opportunity to settle within the policy limits ended a week later, on September 24, 2024. Doc. 21 at fn. 2.

case, hiring conflicted attorneys to represent him, improperly training its staff, and declining to settle the injured party's lawsuit before trial. *Id.* at pp. 10–12.

## Requests to Produce

Discovery in this case opened on April 1, 2024. Doc. 18 at p. 1. Shortly thereafter, Plaintiff served its First Request to Produce. Doc. 20 at 4. On May 8, 2024, Defendant served its objections. Doc. 20-1. Defendant first objected to the Requests to the extent that they sought records from November 8, 2018 (the date of the accident) through October 19, 2023 (the date Florida's Second District Court of Appeals issued its mandate). Doc. 20-1 at p. 1. Plaintiff later agreed to amend its request to materials through September 27, 2023 (the date Florida's Second District Court of Appeals issued its opinion affirming the state-court judgment). Doc. 20 at 12. Defendant argued that materials created after September 2019 were irrelevant, because, after September 2019, the injured state court party was no longer willing to settle within Defendant's bodily-injury policy limits. Doc. 21 at n. 2; *see* Compl. (Doc. 1-1), ¶ 16.

Defendant also objected to Plaintiff's Requests to Produce to the extent they sought materials relating to Defendant's handling of claims related to policies other than Plaintiff's bodily-injury policy. Doc. 21, p. 6. Since Plaintiff alleged Defendant acted in bad faith in handling the bodily-injury policy, Defendant argued, the other materials were irrelevant to the case. *Id.*

Defendant asserted work-product privilege over the materials it claimed were irrelevant. Doc. 20-1 at p. 1, Doc. 20-2. Defendant conceded that work-product privilege over an insurer's claims file was generally waived in a bad faith action, but argued that the waiver only applied to portions of the claims file that were relevant to the lawsuit. Doc. 21, pp. 7–8. Thus, irrelevant information in the claims file, such as records created after September 24, 2019, or records not related to the claim for bodily injury policy, was privileged. *Id.*

## Interrogatories

Plaintiff served its First Set of Interrogatories, to which Defendant responded on May 22, 2024. Doc. 20-3. Interrogatory 2 asked Defendant to identify "all computer programs, applications, and software that were available to [Defendant's] employees at any point during the period of [November 8, 2018] through October 19, 2023, to be used in connection with the handling and/or defense of bodily injury claims in Florida" and, for each, to describe its function, identify whether it was used in connection with Plaintiff's claim or litigation, and explain why or why not. *Id.* at p. 4. Defendant objected, claiming the interrogatory sought (1) information that is irrelevant, immaterial, and not proportional to the needs of the case and (2) confidential, proprietary, and trade secrets business information protected from discovery by sections 688.002(4) and 90.506, Florida Statutes. *Id.* Plaintiff later agreed

4

to narrow its request to ask about only "the programs, applications, and software *actually used* in handling the underlying claim." Doc. 20 at p. 20.

In Interrogatory 3, Plaintiff asked the Defendant to identify all insurance and indemnity agreements that may satisfy all or part of a judgment in this case and provide information about those agreements, including the name of the insurer and insured, the policy number, the dates of policy coverage, the limits of liability coverage, the remaining policy limits, a statement of coverage, and the name and address of the custodian. Doc. 20- at pp. 4–5. Defendant did not object, but answered this interrogatory to the extent that it referenced its response to Plaintiff's First Request to Produce which stated, Defendant is "self-insured and is insured under a policy issued by Progressive Casualty Insurance Company, which may, when applicable, satisfy part of any judgment rendered in this action. There are no specific documents which are responsive to this request." Doc. 20-3 at p. 5; Doc. 20-1 at p. 5.

Dissatisfied with nearly all of Defendant's responses to its Requests for Production and with Defendant's response to the two interrogatories above, Plaintiff filed the present motion to compel. Doc. 20. Plaintiff asks the Court to (1) overrule Defendant's objections to the timeframe for which Plaintiff seeks documents and information, (2) overrule Defendant's objections to the portions of the claims file that relate to policies other than Plaintiff's bodily-

5

injury policy, (3) compel documents identified on Defendant's privilege log (Doc. 20-2), that appear to have been withheld based on these two relevance objections, (4) overrule Defendant's objection to Interrogatory 2, and (5) compel Defendant to provide complete responses to Interrogatories 2 and 3. *Id.* Plaintiff also seeks fees incurred in bringing the motion. *Id.* Defendant opposes the motion, except that it does not object to providing a response to Interrogatory 3. Doc. 21.

## II. Legal Standard

The Court has "broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Rule 26(b), which sets out the scope of discovery, provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Nonetheless, Rule 26(b) provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery

is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C). Hence, although broad, the scope of discovery is not without limits.

### III. Analysis

a. *I Overrule Defendant's Relevance Objection to Materials Created between September 24, 2019 and September 27, 2023.*

Plaintiff seeks documents created or maintained through September 27, 2023,[2] the date of the appellate court opinion affirming the $5.8 million judgment against Plaintiff. Doc. 20 at p. 12. Defendant asserts that materials created after September 24, 2019 are irrelevant to this case, because Plaintiff's allegations stem from Defendant's refusal to settle the state lawsuit against Plaintiff within Defendant's policy limits, and Defendant lost the opportunity to settle within its policy limits on September 24, 2019. Doc. 20-1 at p. 8; Doc. 20-6 at p. 2.

Importantly, while the Complaint highlights Defendant's refusal to settle within its policy limits as one basis for the bad faith claim (Compl. (Doc. 1-1), ¶¶ 15–18), Plaintiff also alleges other bases for its bad faith claim, including that Defendant failed to act honestly and diligently on his behalf, failed to properly train staff to handle the claims, failed to properly communicate with Plaintiff about the case, and hired conflicted attorneys to

---

[2] As stated above, Plaintiff's initial request sought documents through October 19, 2023. Plaintiff subsequently agreed to limit the temporal scope of the request to September 27, 2023. Doc. 20 at p. 12.

7

represent him (*id.* at pp. 10–14). Plaintiff explained at the Court's August 27, 2024 hearing that his (rather broad) allegations in the Complaint encompassed Defendant's actions through (and beyond) the date of the opinion affirming the state court judgment. Plaintiff clarified that he alleges Defendant acted in bad faith, for example, during Defendant's post-trial negotiations on Plaintiff's behalf about the amount of set-offs, taxable costs, and trial and appellate attorney's fees, and in taking the appeal of the original judgment.

"In Florida, the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." *Berges v. Infinity Ins. Co.*, 896 So.2d 665, 680 (Fla. 2005), cited with approval in *Hinson v. Titan Ins. Co.*, 656 F. App'x 482, 486 (11th Cir. 2016) ("Whether an insurer acted in good faith is judged by the 'totality of the circumstances.'"). Consistent with this premise, it is well-settled Florida law that in a bad-faith action against an insurance company "all materials including documents, memorandum and letters, contained in the insurance company's file, up to and including the date of judgment in the original litigation should be produced." *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1126 (Fla. 2005) (emphasis added; quoting *Stone v. Travelers Ins. Co.*, 326 So. 2d 241, 243 (Fla. 3d DCA 1976)).

I find that the Defendant's actions through the time when the judgment became final are relevant to Plaintiff's allegations of bad faith. *See* Compl.

8

(Doc. 1-1), ¶ 30. Accordingly, I overrule Defendant's objections to the production of documents between September 24, 2019 and September 27, 2023, and compel Defendant to produce responsive documents, as well as information sought by Plaintiff in its interrogatories, within that time frame.

> b. *I Overrule Defendant's Objections to Materials in the Claims File that Relate to Other Policies.*

Defendant withholds as irrelevant materials that are in the claims file but that relate to claims against the policy other than the injured party's bodily injury claim. Doc. 21 at pp. 8–9. These materials include records in the claims file related to a subrogation claim, a property damage claim, and a potential PIP claim. *Id.* Defendant argues the information is irrelevant because it is wholly separate from the bodily injury claim that is the subject of the Complaint. *Id.*

Given that the additional claims relate to the same accident and the same insurance contract and are kept within the same claims file, and given that bad faith claims are determined based on the "totality of the circumstances," I find these documents relevant. *See Ford v. Gov't Emps. Ins. Co.*, No. 1:14CV180-MW/GRJ, 2015 WL 11109374 (N.D. Fla. June 11, 2015) (compelling documents in related claims files because the plaintiff "has a substantial need in analyzing the information known to [the insurer] [about the accident] at the time it failed to settle the underlying suit"); *Cf. Johnson v.*

9

*Geico Gen. Ins. Co.*, No. 07-80310-CIV, 2007 WL 3344253, at *2 (S.D. Fla. Nov. 7, 2007) (finding irrelevant claim based on a different insurance contract).

I overrule Defendant's relevance objection to Plaintiff's request for these materials.

 c. *I Order Defendant to Produce Materials Withheld as Privileged Based on the Above Relevance Objections.*

Defendant's privilege log suggests that it asserted work-product privilege over the categories of documents in its claims file that it characterized as irrelevant: (1) material created after September 24, 2019,[3] and (2) material related to claims other than Plaintiff's bodily injury claim (e.g., related to property damage). *See* Doc. 21, pp. 8–12. Defendant claims that the presumptive work-product privilege that protects a claims file is only pierced in bad-faith litigation as to the materials relevant to that litigation. *Id.*

Federal Rule of Civil Procedure 26(b)(3)(A), governs the application of the work-product privilege,[4] and states, "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation

---

[3] Defendant separates this category into two sub-categories: (1) post-September 24, 2019 communications with Plaintiff and other material from the underlying lawsuit that Plaintiff likely already possesses, and (2) other post-September 24, 2019 documents. Defendant asserts it is willing to produce the former if it can do so without waiving its relevancy objections.

[4] While Rule 501, Federal Rules of Evidence, provides that a state's law of privilege governs in federal diversity cases, the work-product privilege is a limitation on discovery in federal cases and, thus, federal law provides the decisional framework.

or for trial by or for another party or its representative." However, work product may be discovered if it is otherwise discoverable under Rule 26(b)(1) and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. Rule Civ. P. 26(b)(3)(A). State law, because it provides guidance as to what materials would be essential in proving the elements of a bad faith claim, is instructive in determining whether there is a "substantial need" for materials otherwise protected by the privilege.

Under Florida law, "[g]enerally, an insurer's claim and litigation files constitute work-product and are protected from production." *Allstate Indemnity Co. v. Ruiz*, 899 So. 2d 1121, 1123 (Fla. 2005). However, in *Ruiz*, the Florida Supreme Court found that work-product privilege gives way in bad-faith cases because there is a substantial need for information in the claims file; specifically, an insured is entitled to discover all information, including that over which the insurer has asserted the work-product privilege, in the claim file and underlying litigation file that 1) was created up to and including the date the underlying case was resolved, and 2) pertains "in any way to coverage, benefits, liability, or damages." 899 So. 2d at 1129–30.

While Defendant concedes that the work-product privilege does not protect from disclosure the claims-file materials relating to its bodily-injury policy and created between the date of the accident through September 24,

11

2019, Defendant argues that the privilege remains in-tact over documents Defendant has deemed irrelevant. Defendant thus withholds as privileged material created after September 24, 2019 and/or related to policies other that the bodily-injury policy.

However, as stated above, I overrule Defendant's relevance objections based on material being created after any settlement window passed or relating to claims against the policy other than the injured party's bodily injury claim. I therefore compel Defendant to produce the documents on its privilege log that Defendant withheld in reliance on these relevance objections.

> d. *I grant in part Plaintiff's Motion to Compel a Response to Interrogatory 2.*

Interrogatory 2 asked Defendant to identify "all computer programs, applications, and software that were available to [Defendant's] employees at any point during the period of [November 8, 2018] through October 19, 2023, to be used in connection with the handling and/or defense of bodily injury claims in Florida" and, for each, to describe its function, identify whether it was used in connection with Plaintiff's claim or litigation, and explain why or why not. Doc. 20-3 at p. 4. Plaintiff subsequently agreed to narrow the interrogatory to encompass only the programs, applications, and software *actually used* in handling the underlying claims. Doc. 20 at p. 20. Plaintiff argues that the interrogatory is relevant to the extent that Defendant used the

12

software in its decisions to reject the injured party's settlement demands or to make lower counteroffers. *Id.* at pp. 19–20.

Defendant initially objected to the interrogatory, arguing that it sought (1) "information that is irrelevant, immaterial, and not proportional to the needs of the case" and (2) "confidential, proprietary, and trade secrets business information protected from discovery" by sections 688.002(4) and 90.506, Florida Statutes. *Id.* However, in its opposition to Plaintiff's Motion to Compel, Defendant abandoned its confidentiality[5] and trade secret objections, arguing only that "there is no reasonable basis proportional to the needs of this case to require invasive information into [Defendant's] internal computer system processes," especially given that Defendant already produced electronic claim notes that gave its adjusters' reasons for each offer.[6] Doc. 21 at pp. 13–14; *see also Jones v. Bank of Am., N.A.*, 564 F. App'x. 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.")

Plaintiff explains that the interrogatory is designed to discover whether Defendant used programs "to determine whether to make a settlement offer

---

[5] Plaintiff notes that the parties have a confidentiality agreement that could alleviate Defendant's concerns about any dissemination of the information. Doc. 20 at p. 10.

[6] Defendant also objects to the temporal scope of the request, but that objection has been addressed above. *See* § III.A., *supra*.

and, if so, the amount of any offers." Doc. 20 at p. 19. Thus, I sustain in part Defendant's objection to the extent the interrogatory asks about computer programs, applications, or software other than those used in making settlement decisions.

I next turn to the proportionality of the request. When evaluating whether requested discovery is proportional to the needs of the case, a court should consider: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). At this juncture, Plaintiff is merely seeking the identification of any software Defendant used in handling the underlying claim, along with an explanation of the software's function and why and how it was used. Doc. 20-3 at p. 4. I agree with Plaintiff that, to the extent certain software programs were relied upon by Defendant in making its settlement decisions, such information could shed light on Defendant's settlement analyses (*see* Doc. 21-1). I also note that Plaintiff has made a multi-million-dollar demand, that the Defendant is a large company with exclusive access to the information sought, and that the Defendant has not demonstrated any substantial burden or expense in responding to the interrogatory. So, I find

14

that the request, as narrowed by Plaintiff and the Court, is proportional to the needs of the case.

Accordingly, I partially overrule Defendant's objections in response to Interrogatory 2, and order Defendant to respond to the interrogatory, as narrowed by Plaintiff and the Court above.

> e. *I Grant as Unopposed Plaintiff's Motion to Compel a Complete Response to Interrogatory 3.*

Plaintiff seeks a complete response to Interrogatory 3, which asks Defendant to identify all insurance and indemnity agreements that may satisfy all or part of a judgment in this case and provide information about those agreements, including the name of the insurer and insured, the policy number, the dates of policy coverage, the limits of liability coverage, the remaining policy limits, a statement of coverage, and the name and address of the custodian. Doc. 20-3 at pp. 4–5. Defendant does not oppose the request. Doc. 21 at p. 14.

Accordingly, I grant the request as unopposed, and order Defendant to provide a complete response to the question posed by Interrogatory 3, including all subparts.

f. *I Deny Plaintiff's Motion to the Extent it Seeks to Recover its Expenses in Making the Motion.*

Finally, Plaintiff seeks an award of expenses that he incurred in moving to compel. Rule 37(a)(5) provides, regarding "Payment of Expenses; Protective Orders":

> (A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

FED. R. CIV .P. 37(a)(5). Defendant claims an award of fees is inappropriate here because its objections were substantially justified.

A party's position in a discovery dispute is "substantially justified" if it represents a "genuine dispute, . . . or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations omitted). Here, I found in part for Plaintiff, and in part

for Defendant. I do not find that any party's position was so unreasonable as to justify fee shifting. Accordingly, I deny Plaintiff's request for expenses.

### D. Conclusion

Plaintiff's Motion to Compel (Doc. 20) is GRANTED IN PART, and DENIED IN PART as follows:

1. Defendant's relevance objections to claims-file materials based on temporal scope are OVERRULED. No later than September 10, 2024, Defendant shall produce responsive documents and information for the period ending September 27, 2023.

2. Defendant's relevance objections to claims-file materials relating to policies other than the bodily injury policy are OVERRULED. No later than September 10, 2024, Defendant shall produce the documents it withheld on this basis.

3. Plaintiff's motion to compel a full response to Interrogatory 2 is GRANTED IN PART and DENIED IN PART. I sustain Defendant's objection to the extent the interrogatory asks about computer programs, applications, or software other than those actually used by Defendant in making settlement decisions relating to Plaintiff. I otherwise overrule the objection. Defendant shall furnish a response to Interrogatory 2, as narrowed by Plaintiff and by the Court above, no later than September 10, 2024.

4. No later than September 10, 2024, Defendant shall provide a complete response to Interrogatory 3, including all sub-parts.

5. Plaintiff's motion to compel is otherwise DENIED.

DONE on August 27, 2024.

*Natalie Hirt Adams*
NATALIE HIRT ADAMS
United States Magistrate Judge